**RECEIVED**

DEC 2 3 2016

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

ISLAND OPERATING CO., INC.                    CIVIL ACTION NO. 6:16-cv-00145

VERSUS                                        JUDGE DOHERTY

JEWELL, ET AL.                                MAGISTRATE JUDGE HANNA

**TRIAL RULING**

I.   **Introduction**

This matter comes before this Court through trial on the merits by way of briefs. Island
Operating Co., Inc. ("Island") appeals an issuance of a Notice of Incident of Noncompliance
("INC") by the Bureau of Safety & Environmental Enforcement ("BSEE"), pursuant to the
Administrative Procedure Act, and brings separate challenges to the actions of BSEE, as well as
other U.S. officers and agencies, pursuant to the Outer Continental Shelf Lands Act ("OCSLA")
and the U.S. Constitution. Island is a contractor that provides personnel to perform work on the
Outer Continental Shelf ("OCS"). In 2013, BSEE issued an INC to Island for a 2012 incident
involving Island's employees, who at the time were in the service of a company which held a lease
pursuant to OCLSA; Island contends BSEE exceeded or violated its statutory authority and/or
requirements in issuing that INC. The parties have agreed to trial of this matter by briefs. There
is no dispute this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, and venue
is proper in the Western District of Louisiana.

II.  **Procedural History**

On June 7, 2012, BSEE issued an INC to Apache – the holder of a lease under OCSLA –
for violation of 30 C.F.R. § 250.107, related to an incident that occurred on June 3, 2012 ("the

1

Apache INC").[1]  On March 5, 2013, BSEE, also, issued an INC to Island – a personnel contractor whose employees had been working for Apache during the incident of June 3, 2012 – for violation of 30 C.F.R. § 250.107(a)(1), arising from the same incident ("the Island INC").[2]  Island requested BSEE rescind the Island INC, arguing, primarily, OCSLA does not grant BSEE enforcement authority against contractors.[3]  BSEE refused to rescind the Island INC, and Island subsequently filed a notice of appeal with the Interior Board of Land Appeals ("IBLA"), which affirmed BSEE's issuance of the Island INC.[4]

The IBLA affirmation constituted final action by the Department of the Interior, and subsequently Island brought suit before this Court, filing its Original Complaint on January 29, 2016.[5]  Island sought to appeal the issuance of the INC by BSEE and the affirmation by the IBLA, on the basis of the appeal record, pursuant to the Administrative Procedure Act, and alternatively to challenge BSEE's authority to issue the INC under OCSLA, and/or to challenge the method in which BSEE, allegedly, changed its interpretation of OCSLA, pursuant to the Administrative Procedure Act and the U.S. Constitution.[6]  Island named as defendants the U.S. Department of the Interior, Secretary of the U.S. Department of the Interior Sally Jewell, BSEE, and BSEE Director Brian Salerno.[7]  In its Complaint, Island challenges BSEE's authority, under OCSLA and its implementing regulations, to enforce OCSLA's safety and environmental regulations against contractors such as Island, and seeks relief under the Administrative Procedure Act, the Declaratory Judgment Act, and the U.S. Constitution.[8]  In particular, Island requests this Court (1)

---

[1] Rec. Doc. 24, p. 9; Rec. Doc. 26, p. 6.
[2] Rec. Doc. 24, p. 10; Rec. Doc. 26, pp. 6-7.
[3] Id.
[4] Rec. Doc. 24, pp. 10-11; Rec. Doc. 26, p. 7.
[5] Rec. Doc. 1; Rec. Doc. 24, p. 11; Rec. Doc. 26, p. 7.
[6] Rec. Doc. 1.
[7] Rec. Doc. 1.
[8] Rec. Doc. 1.

2

reverse the IBLA decision affirming the Island INC; (2) enter judgment holding unlawful and setting aside the Island INC and the IBLA affirmation thereof on the ground that each was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law; (3) permanently enjoin enforcement of the Island INC, the IBLA affirmation thereof, and any associated civil penalty review; (4) enter an order compelling BSEE to comply with OCSLA and its implementing regulations by ceasing the issuance of INCs to contractors; (5) enter judgment declaring that BSEE cannot issue INCs to contractors under OCSLA and its implementing regulations; (6) award Island its costs and reasonable attorneys' fees as the Court may deem just and proper; and (7) grant such other and further legal and equitable relief as the Court may deem just and proper.[9]

The defendants filed an Answer on April 18, 2016, disputing Island's challenges to BSEE's exercised authority.[10] The administrative record was lodged with this Court on May 12, 2016, and subsequently supplemented.[11] On July 29, 2016 the parties agreed all claims would be decided by this Court by way of trial on briefs, whether any claim was made directly, as an administrative appeal – as argued by the defendants – or brought as a separate statutory or constitutional challenge – as Island argues – and this Court accepted the parties' Jointly Proposed Briefing Plan.[12] Island submitted its trial brief on September 9, 2016[13] and the defendants submitted theirs on October 14, 2016.[14]

## III.   Applicable Law

### A.  Administrative Procedure Act

---

[9] Rec. Doc. 1, pp. 35-36.
[10] Rec. Doc. 10.
[11] Rec. Docs. 12, 14, 23.
[12] Rec. Doc. 21.
[13] Rec. Doc. 24.
[14] Rec. Doc. 26.

While it is not explicitly argued in either of the trial briefs, the parties to this matter have vigorously and consistently disputed the identification and application of the relevant laws. Island argues it is appealing decisions of BSEE and the IBLA, and although Island accepts it has a claim in the nature of an appeal pursuant to the Administrative Procedure Act, it, also, argues it is, additionally, and alternatively, making separate challenges to BSEE's authority and actions, pursuant to OCSLA and the U.S. Constitution, and, therefore, vehemently argues its claims are not restricted to a review under Administrative Procedure Act.[15]   The defendants, conversely, vehemently argue Island's entire claim(s) come(s) before this Court exclusively through the vehicle of an appeal under the Administrative Procedure Act, and, therefore, all of Island's arguments should be reviewed according to the standards and procedures set out therein.[16]

It is this Court's understanding, informed by the pleadings, discussion with counsel, and the trial briefs, that the parties have not come to an agreement on whether the Administrative Procedure Act is the sole law under which Island's case is brought before this Court – in which case this Court would typically be restricted to the evidence in the administrative record[17] – or is only one law under which Island brings its claims.  The parties have agreed, however, that all claims in this matter can be decided on the parties' briefs, and that all relevant evidence is either included in the administrative record or is referenced in the trial briefs as being in the nature of statute, public document, or jurisprudence.[18]

**B.  OCSLA and Implementing Regulations**

---

[15] *See* Rec. Doc. 1; Rec. Doc. 24.

[16] *See* Rec. Doc. 10; Rec. Doc. 26.

[17] Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985) (citing Citizens to Pres. Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)).

[18] Rec. Doc. 21.

4

As Island challenges BSEE's *authority* to issue an INC and enforce the safety and environmental provisions of OCSLA against contractors under 43 U.S.C. § 1331, *et seq.*, and its implementing regulations, this Court finds review of the following relevant portions of OCSLA and its implementing regulations necessary to determination of the question(s) presented.

**Section 1331 of OCSLA** (entitled: "Definitions") provides "the term 'person' includes, in addition to a natural person, an association, a State, a political subdivision of a State, or a private, public, or municipal corporation."[19]

**Section 1348 of OCSLA** (entitled: "Enforcement of safety and environmental regulations") provides in relevant part that:

> "It shall be the duty of any *holder of a lease or permit* under [OCSLA] to (1) maintain all places of employment *within the lease area* or within the area *covered by such permit* in compliance with occupational safety and health standards and, in addition, free from recognized hazards to employees of the lease holder or permit holder or of any contractor or subcontractor operating within such lease area or within the area covered by such permit on the outer Continental Shelf; (2) maintain all operations within such lease area or within the area covered by such permit in compliance with regulations intended to protect persons, property, and the environment on the outer Continental Shelf..."(emphasis added)[20]

**Section 1350 of OCSCLA** (entitled: "Remedies and penalties") provides in relevant part that:

> "if any *person* fails to comply with any provision of this subchapter, or any term of a lease, license, or permit issued pursuant to this subchapter, or any regulation or order issued under this subchapter, after notice of such failure and expiration of any reasonable period allowed for corrective action, such person shall be liable for a civil penalty..."(emphasis added)[21]

**Section 250.107** of BSEE's **regulations** (entitled: "What must I do to protect health, safety, property, and the environment?") provides in relevant part that: "*You* must protect health, safety, property, and the environment by (1) [p]erforming all operations in a safe and workmanlike manner...."[22]

---

[19] 43 U.S.C. § 1331(d).
[20] 43 U.S.C. § 1348(b)(1)-(2).
[21] 43 U.S.C. § 1350(b)(1).
[22] 30 C.F.R. § 250.107(a)(1).

**Section 250.105** of BSEE's **regulations** (entitled: "Definitions") defines "*you*" as "a lessee, the owner or holder of operating rights, a designated operator or agent of the lessee(s), a pipeline right-of-way holder, or a State lessee granted a right-of-use and easement."[23]

**Section 250.146** of BSEE's **regulations** (entitled: "Who is responsible for fulfilling leasehold obligations?") provides in relevant part that: "Whenever the regulations in 30 CFR parts 250 through 282...require the lessee to meet a requirement or perform an action, the lessee, operator (if one has been designated), and the *person* actually performing the activity to which the requirement applies are jointly and severally responsible for complying with the regulation"(emphasis added).[24]

**Section 250.105** of BSEE's **regulations** (entitled: "Definitions") defines "person" as including "a natural person, an association (including partnerships, joint ventures, and trusts), a State, a political subdivision of a State, or a private, public, or municipal corporation."[25]

Thus, the parties' arguments present an alleged conflict of interpretation between the grounding statute, here the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, *et seq.*, and the the regulations created by the agency, by way of that statute. This Court's analysis of the issues at hand must begin with that announced by the Supreme Court in Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,[26] and must follow the two-part analysis when reviewing an agency's construction of a statute it administers. The U.S. Supreme Court instructs that if the Court, using "traditional tools of statutory construction,"[27] finds that "Congress has directly spoken to the precise question at issue...that is the end of the matter." [28]  If the Court finds Congress has not

---

[23] 30 C.F.R. § 250.105.
[24] 30 C.F.R. § 250.146(c).
[25] 30 C.F.R. § 250.105.
[26] 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).
[27] Chevron, 467 U.S. at n. 9.
[28] Chevron, 467 U.S. at 842.

directly addressed the precise question at issue, the issue is "whether the agency's answer is based on a permissible construction of the statute."[29]  The Fifth Circuit, in <u>United States v. Fafalios</u>, 817 F.3d 155 (5th Cir. 2016), notes the applicable analysis "interprets regulations in the same manner as statutes, looking first to the regulation's plain language…[w]here the language is unambiguous, we do not look beyond the plain wording of the regulation to determine meaning" (internal quotations and citations omitted).[30]  In <u>King v. St. Vincent's Hosp.</u>, the U.S. Supreme Court cautioned that "a statute is to be read as a whole... *since the meaning of statutory language, plain or not, depends on context*." 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991) (emphasis added).

## IV.    Factual Background

The facts underlying BSEE's issuance of the INC to Island are not in dispute.  On June 3, 2012, two of Island's employees had been provided under contract to Apache, the holder of an OCS lease, and were operating on an otherwise unmanned platform, arguably without the specific knowledge of their actual actions and without control by Island.[31]  While transferring chemicals from a transport tank on a boat to a holding tank on the platform, the receiving tank overflowed, exposing the chemicals to heat from a nearby exhaust stack, and resulted in the ignition of the overflowing chemicals.[32]  Island's employees jumped from the burning platform into the Gulf of Mexico, were retrieved shortly thereafter by nearby boats, and the fire on the platform was doused in short order.[33]

## V.    Analysis

---

[29] <u>Chevron</u>, 467 U.S. at 843.
[30] <u>Fafalios</u>, 817 F.3d at 159.
[31] Rec. Doc. 24, p. 9; Rec. Doc. 26, p. 5.
[32] Rec. Doc. 24, p. 9; Rec. Doc. 26, p. 6.
[33] <u>Id</u>.

## A. The Parties' Arguments

The plaintiff, Island, makes several distinct arguments, several of which turn on the central claim that the text of the *statute*, OCSLA, does not allow enforcement against parties such as Island, *i.e.*, contractors, and thus, the *regulations*, should they be so interpreted, and were they properly enforced, could not apply to Island, *i.e.*, a contractor, as to apply them to Island would extend the reach of the *regulation* beyond the reach of the *statute*. Island argues 43 U.S.C. § 1348 (entitled: "Enforcement of safety and environmental regulations") of the enabling *statute*, OCSLA, imposes, on *the holder of a lease or permit exclusively*, the duty to maintain all places of employment within a lease or permit area to the safety and environmental standards set out in OCSLA and its implementing regulations. As the parties agree Island is a personnel *contractor* and *neither a lease-holder nor a permit-holder*, Island argues it cannot be subject to enforcement *under the text of the statute, OCSLA,* and thus, any implementing *regulation* established *pursuant to the statute* – should they be so interpreted – cannot exceed the reach of the *statute*. Island, additionally, argues history supports its interpretation of OCSLA, as Island argues BSEE has only recently changed its interpretation of OCSLA and its enforcement practices to allow enforcement against *contractors*, such as Island. Island further argues, in the alternative, this shift in enforcement and interpretation was instituted in such a way as to violate the applicable rule-making procedures, as well as the U.S. Constitution.

The defendants argue the text of the statute, OCSLA, as well as its implementing regulations do, in fact, encompass Island, *i.e.*, contractors, and do allow enforcement against Island, *i.e.*, contractors. The defendants draw attention to Section 1350 of OCSLA (entitled: "Remedies and penalties"), which states that "if any *person* fails to comply with any

provision"(emphasis added)[34] of OCSLA, they may be subject to a civil penalty.  Defendants argue that, as Island is a "person" – defined in OCSLA to include "private, public, or municipal corporation[s]" – whose employees perform services on the OCS (or at least did so during the incident of June 3, 2012), thus, Island falls within the definition of a *person* – under the *statute*[35] – and is, therefore, potentially subject to a civil penalty.

The defendants further point *to BSEE's regulations* to argue Island, *i.e.*, a contractor, is not necessarily exempt from enforcement.   The defendants note the regulation, 30 C.F.R. § 250.107(a)(1) (entitled: "What must I do to protect health, safety, property, and the environment?") states that "*you* must protect health, safety, property, and the environment by performing all operations in a safe and workmanlike manner"(emphasis added).  The defendants further note Section 250.105 of BSEE's *regulations* (entitled: "Definitions") defines "you" as "a lessee, the owner or holder of operating rights, a designated operator or agent of the lessee(s), a pipeline right-of-way holder, or a State lessee granted a right-of-use and easement."[36]  Thus, the defendants argue the authority exists to enforce against those such as Island, *i.e.*, contractors.

Furthermore, the defendants argue the regulation 30 C.F.R. § 250.146(c) (entitled: "Who is responsible for fulfilling leasehold obligations?") states that "[w]henever the regulations in 30 CFR parts 250 through 282...require the lessee to meet a requirement or perform an action, the lessee, operator (if one has been designated), and *the person actually performing the activity* to which the requirement applies *are jointly and severally responsible* for complying with the regulation."(emphasis added)   The defendants, thus, rely heavily on the language of the

---

[34] 43 U.S.C. § 1350(b)(1).
[35] 43 U.S.C. § 1331(d) (entitled: "Definitions") defines the term "person" to include "in addition to a natural person, an association, a State, a political subdivision of a State, or a private, public, or municipal corporation." 30 C.F.R. § 250.105 (entitled: "Definitions") defines the term "person" to include "a natural person, an association (including partnerships, joint ventures, and trusts), a State, a political subdivision of a State, or a private, public, or municipal corporation."
[36] 30 C.F.R. § 250.105.

*regulations*, here found at 30 C.F.R. § 250.146(c), which states that the duty to comply with the provisions of the actual statute, OCSLA, applies not only to lease-holders and permit-holders, as found in the language of the statute, but, also, to "the *person* actually performing the activity"(emphasis added)[37] being regulated. As Island's employees actually performed the activity at the center of the incident of June 3, 2012, the defendants argue, Island, thus, is susceptible to liability for violating OCSLA as interpreted or defined by its implementing regulations, in addition to Apache (the lease-holder), for the same incident.

Thus, Island's argument relies heavily on the statutory language, and the defendants' argument relies more heavily on the regulations.

### B. BSEE's Authority Under OCSLA

As noted above, this Court must begin with the threshold question presented, *i.e.*, determining whether "Congress has directly spoken to the precise question at issue," and if so, "that is the end of the matter."[38] Notwithstanding the technical and nuanced arguments presented by the parties, this Court finds the threshold question presented to be a relatively straightforward one of statutory interpretation. As noted above, interpretation of statutes and regulations begins with their plain language. **43 U.S.C. § 1331** (entitled: "Definitions"), delineates what types of juridical entities can be subject to the edicts of the *entire statute*, *i.e.*, a "person" is defined as including, "in addition to a natural person, an association, a State, a political subdivision of a State, or a private, public, or municipal corporation."[39] **43 U.S.C. § 1348(b)** is entitled "Enforcement of safety and environmental regulations," and *identifies against which "persons" the/a duty is imposed as to safety and environmental issues, i.e.*, against whom that portion or section of the

---

[37] 30 C.F.R. § 250.146(c).
[38] Chevron, 467 U.S. at 842.
[39] 43 U.S.C. § 1331(d).

statute can be enforced.  Section 1348(b), also, defines the duty which is imposed – *i.e.*, *the duty to maintain places of employment and operations within the area of a lease or permit in compliance with safety, health, and environmental regulations falls* – on "*any holder of a lease or permit*" (emphasis added) granted under OCSLA, and *does not list any other types of party upon whom that duty falls*. **43 U.S.C. § 1350**, entitled "Remedies and penalties," describes *what kind and type of remedies and penalties can be levied* against those who *violate the duty imposed*, and includes civil penalties among them.

Thus, **Section 1331 of OCSLA** (entitled: "Definitions") determines what types of juridical entity are subject *to the entire Act*, here, OCSLA.  **Section 1348 of OCSLA** (entitled: "Enforcement of safety and environmental regulations") *defines the duty* imposed *as to safety and environmental issues*, and lists those *who hold that duty* under OCSLA – *i.e.*, any *holder of a lease or permit*.  **Section 1350 of OCSLA** delineates the types of penalties allowed against those who violate those safety and environmental duties.  Therefore, by way of a contextual reading of the statute, a party who is neither a lease-holder nor a permit-holder, such as Island, is not identified in Section 1348 as having a duty related to environmental and safety standards, and, thus, cannot be found to have violated a duty with which it is not charged, and, therefore, cannot be subject to a penalty or fine.  Consequently, the statute's plain language, when read in context, is clear, and does not embrace contractors, such as Island, within the duty created by Section 1348(b).  Thus, pursuant to the *language of the statute*, only lease-holders and permit-holders are subject to the environmental and safety duty established by the statute, and, thus, subject to enforcement of that duty.  Therefore, Island, as a contractor, would not.

The defendants, however, argue Section 1350 of OCSLA notes "any *person*" who fails to comply is susceptible to receiving a penalty, and that the general definitions portion of OCSLA,

found at 43 U.S.C. § 1331, defines "person" broadly.  However, when read in context, 43 U.S.C. § 1331 delineates the *types of juridical entities* who might be subject to the "subchapter," *i.e., the entire statute*, OCSLA.  Whereas, the specific portion of the statute addressing the environmental and safety requirements provides the list of "persons" upon whom the duty as to environmental and safety matters has been imposed, and what that duty encompasses, that delineation is only as to "*any holder of a lease or permit*" (emphasis added).[40]  Therefore, the relevant portion of the statute identifies those who have a duty and, consequently, therefore, those who can fail to comply with those imposed safety and environmental duties, and, thus, those who can be subject to enforcement action for failure to comply with the safety and environmental duties imposed by Section 1348 – namely, "any holder *of a lease or permit* under [OCSLA]."[41]  Therefore, when read in context, the statute, itself, defines against whom the legislature chose to impose a duty for safety and environmental compliance, and that imposed duty does not extend beyond permit-holders and lease-holders.

This statutory interpretation becomes clear when the entire statute is viewed in context, as required by the U.S. Supreme Court.

**43 U.S.C. § 1331** (entitled: "Definitions") defines the types of juridical entities to which *the entire Act will apply*.  As such, the section provides "the term 'person' includes, in addition to a natural person, an association, a State, a political subdivision of a State, or a private, public, or municipal corporation."[42]  *This section, therefore, establishes the kinds of juridical entity that can be subject to the provisions and obligations of the entire Act.*

---

[40] 43 U.S.C. § 1348(b).
[41] 43 U.S.C. § 1348(b).
[42] 43 U.S.C. § 1331(d).

12

**43 U.S.C. § 1348** (entitled: "Enforcement of safety and environmental regulations"), is the specific portion of the Act dedicated to environmental and safety obligations, and establishes a duty, as well as against whom that duty is imposed, as to safety and environmental matters. Section 1348 notes that *lease-holders and permit-holders* have a duty under OCSLA – namely, to "maintain all places of employment...in compliance with occupational health and safety standards."[43] *To that end, this section provides that "any holder of a lease or permit" under OCSLA has a duty to "maintain all places of employment within the lease area or within the area covered by such permit in compliance with occupational safety and health standards.... "*[44]

**43 U.S.C. § 1350** (entitled: "Remedies and penalties") does not itself impose any obligations, rather, *it describes what actions the Secretary – or an agency created to administer provisions of OCSLA – can take against those who fail to meet the obligations under the duty imposed by 43 U.S.C. § 1348(b).*

While Section 1350 of OCSLA does indeed read that "any person" who violates the provisions of OCSLA may be liable for a penalty, only those "persons" against whom a duty has been imposed can violate that duty; 43 U.S.C. § 1348(b) establishes the duty imposed, and to whom it applies – "any holder of a lease or permit."

This statutory interpretation, based on context and the plain language of the statute, is bolstered by the legislative history of Section 1348, which is referenced by each party, although, each as evidence to support their respective arguments. The legislative history shows a previous formulation of Section 1348(b) provided "[a]ll holders of leases and permits under this Act shall – (1) be responsible *jointly with any employer or subcontractor* for the maintenance of occupational safety and health, environmental protection, and other safeguards..." (emphasis

---

[43] 43 U.S.C. § 1348(b).
[44] 43 U.S.C. § 1348(b)(1)-(2).

added),[45] which arguably, would have made contractors, companies in Island's position, explicitly bearers of the duty the defendants argue. However, the language ultimately adopted by both Houses of Congress, which is enshrined in OCSLA presently, *omitted any such broadening reference to subcontractors in Section 1348*, leaving the duty with, only, those listed in 43 U.S.C. § 1348(b), *i.e.*, lease-holders and permit-holders exclusively. Thus, the legislative history bolsters this Court's reading of the statute.

Defendants argue, however, that the line of reasoning focusing on Sections 1348 and 1350 is misguided, as BSEE in actuality relies on 43 U.S.C. § 1334(a) (entitled: "Administration of leasing") as the source of their argument that the duties imposed as to environmental and safety matters extend beyond lease-holders and permit-holders, and that they do not rely solely on 43 U.S.C. § 1350; however, this argument is not persuasive, as it focuses a separate and distinct section of the Act, that addressing the nature of the regulatory power granted *to administer the leasing of the OCS under OCSLA*. Defendants, also, suggest 43 U.S.C. § 1334 gives the Secretary "broad authority to issue regulations governing offshore operations,"[46] under all aspects of the statute; however, viewing the argued language *in statutory context* undermines the defendants' argument.

The provisions of 43 U.S.C. § 1334, which are entitled "Administration of leasing," address the Secretary's authority *concerning the leasing* on the OCS. Those provisions are not found within, nor do they address environmental or safety standards, who must abide by those standards, or what remedies are available against those who do not. Additionally, in relevant part, 43 U.S.C. § 1334 states that the Secretary "shall *administer* the provisions of [OCSLA] *relating to the leasing*

---

[45] Excerpt from S.9, 95th Cong. § 22, A bill proposed by Mr. Jackson and Mr. Metcalf titled "Outer Continental Shelf Lands Act Amendments of 1977" IOC0152–53.
[46] Rec. Doc. 26, p. 10.

of the outer Continental Shelf, and shall prescribe such rules and regulations as may be necessary *to carry out such provisions*"[47] (emphasis added) – *i.e.*, such provisions being those found within the Act and related *to the leasing* of the OCS. To read the argued language in the manner argued by the defendants would, in effect, violate a contextual reading of the statute, and would, also, grant the Secretary unbridled authority to exceed the reach of the statute and, thereby, grant the Secretary authority to, in effect, legislate by going well beyond the language of OCSLA and well beyond "*administering*" the statute, OCSLA. One *administering* a statute cannot go outside the reach of that statute itself. Section 1348 of the *statute* specifically addresses the ambit of the duty to maintain compliance with safety or environmental standards and to whom that duty applies – "administration" cannot go beyond the duty imposed by the statute, itself.

The defendants, also, rely on a reading of the *regulations* implementing OCSLA. BSEE's *regulations* – which cannot exceed the authority granted by the enabling statute – arguably, are worded more broadly than is the Act, specifically 43 U.S.C. 1348; however, *regulations cannot expand the scope of the statute itself.* As noted above, the *regulation* 30 C.F.R. § 250.146(c), on its face, could be read to extend the duty imposed to "the *person* actually performing" the work, extending the duty beyond the lease-holder or permit-holder; however, BSEE's *regulations* can only implement the provisions of *the statute* OCSLA, and cannot expand the enabling statute's, here, OCSLA's, reach. Under the current language of the statute, OCSLA, *the duty to comply with the safety and environmental standards* under OCSLA, flows only to either *a lease-holder or a permit-holder*; broader language in the implementing *regulations* cannot impose duties on persons not identified by the *statute*.

---

[47] 43 U.S.C. § 1334(a).

While the defendants make many laudable policy arguments in favor of regulation of contractors on the Outer Continental Shelf, especially in light of the near catastrophic 2010 incident involving the *Deepwater Horizon*, such arguments are better addressed to the legislature, which has the ability to grant that authority to the Secretary and the agency through amendments to the applicable statute.   Thus, for the above reasons, this Court must find BSEE did not have authority under 43 U.S.C. § 1331, *et seq.*, to institute an enforcement action against one such as Island under the facts of this case, under the plain language of 43 U.S.C. § 1331, *et seq.*

### C.  Island's Administrative Appeal and Challenges to BSEE's Interpretation

As noted above, this Court has found Congress, by way of OCSLA, at the time of this incident, did not grant BSEE the authority to enforce safety and environmental regulations against a non-lease-holder or non-permit-holder, here, such as Island.   Therefore, the Court finds it unnecessary to address Island's additional arguments couched as *administrative* challenges to BSEE's promulgation and enforcement of its regulations, BSEE's administrative interpretation of OCSLA, and/or BSEE's administrative interpretation of its own *regulations*, the method in which any of those regulations or interpretations were changed, or whether any of BSEE's actions violated Island's rights under the U.S. Constitution.   Without the statutory authority to impose the duties listed in Section 1348 against Island, *i.e.*, a non-lease-holder and non-permit-holder, BSEE's interpretations and methods of promulgating its regulations cannot impact non-lease-holders or non-permit-holders such as, in this instance, Island.

## VI.   Conclusion

This Court finds the plain language of the applicable provisions of the statute, 43 U.S.C. § 1331, *et seq*, did not grant BSEE the authority to enforce OCSLA's regulations against a non-lease-holder or non-permit-holder; here, Island.   Again, this Court finds 43 U.S.C. § 1331 (entitled:

"Definitions") defines the *types of juridical entities* to which *the entire Act* can apply, by defining "person" to include "in addition to a natural person, an association, a State, a political subdivision of a State, or a private, public, or municipal corporation."[48] 43 U.S.C. § 1348 (entitled: "Enforcement of safety and environmental regulations") imposes a duty *as to safety and environmental issues*, and identifies those who have a duty to abide by those safety and environmental regulations ("*any holder of a lease or permit*"[49]). 43 U.S.C. § 1350 (entitled: "Remedies and penalties") provides what penalties or remedies can be imposed against those who have the duty and fail to comply with the statutorily imposed duty.

As Island is neither a lease holder nor a permit holder under OCSLA, any enforcement action by BSEE against Island for failure to maintain the duty imposed by 43 U.S.C. § 1348 is deemed invalid. Thus, any issuance of an INC or civil penalty levied against Island as a result of such enforcement is equally invalid.

Thus, as this Court finds BSEE had no authority under OCSLA to impose a penalty against Island under the applicable safety or environmental regulations, as Island is not a lease-holder or permit-holder, any INC against Island issued by BSEE, giving notice of violation of such regulations, or any decision by the IBLA affirming the issuance of such an INC to Island, in this instance, as well as any fine, penalty, or remedy imposed against Island was, also, without authority, and is hereby vitiated.

As this Court finds BSEE had no authority to enforce safety or environmental regulations against a non-lease-holder or non-permit-holder such as Island, it need not address Island's *administrative appeal* from the IBLA decision affirming the Island INC. Neither must this Court

---

[48] 43 U.S.C. § 1331(d).
[49] 43 U.S.C. § 1348(b).

reverse nor sustain the IBLA decision on its merits, as it has found BSEE lacked the authority to enforce those regulations against Island in the first instance.

As this Court has vitiated the Island INC, it, also, declines to set it or the IBLA affirmation aside *on the grounds of arbitrariness, capriciousness, abuse of discretion*, or being otherwise contrary to law, except to the extent noted above.

As this Court finds BSEE had no statutory authority to enforce safety or environmental regulations against a non-lease-holder or non-permit-holder, such as Island, and has vitiated the Island INC, it need not enjoin enforcement of the Island INC, the IBLA affirmation, or any associated civil penalty review – all having been declared invalid and, thus, vitiated. The Court will, furthermore, decline to issue an order beyond the reach of this ruling, *i.e.*, compelling BSEE to comply with OCSLA and its implementing regulations by ceasing the practice of issuing INC's to contractors, as requested by Island, as this Court finds the request is overly broad. The legislature is free to act to extend the reach of the statute, 43 U.S.C. § 1331, *et seq.*, at any time, and with such action this Court's analysis and ruling could be impacted or altered. Facts play a defining role as to what role an actor on the Outer Continental Shelf might play; this Court can envision circumstances where a contractor could, also, be a lease-holder or permit-holder. Therefore, for much the same reasons, the Court finds the requested relief to be overly broad, and will decline to issue an additional judgment declaring that BSEE cannot issue INCs to contractors under OCSLA and its implementing regulations.

In its Complaint, Island requests costs.[50]   Under the Federal Rules of Civil Procedure, "costs – other than attorney's fees – should be allowed to the prevailing party. But costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by

---

[50] Rec. Doc. 1, p. 36.

law."[51] 28 U.S.C. § 1920 (entitled: "Taxation of costs") defines, in general, the costs that may be taxed, namely: "(1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under [28 U.S.C. § 1923]; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under [28 U.S.C. § 1828]."[52]

Island, also, requests "reasonable attorneys' fees."[53] In general, fees – especially attorneys' fees – are not awarded without some specific provision under the law allowing them.[54] This Court notes that 43 U.S.C. § 1349 (entitled: "Citizens suits, jurisdiction and judicial review"), *i.e.*, OCSLA, does allow an award of "reasonable attorney and expert witness fees"[55] in certain limited circumstances, but makes no mention of application against the government, although certain suits would, by definition under the statute, be couched against an agency of the government. However, the plaintiff only cites this section of OCSLA in a footnote describing an additional jurisdictional basis of its suit before this Court, and provides no legal argument in reference to its passing request for attorneys' fees in the Complaint. Island presents no explicit legal argument in its Complaint or trial brief as to why, and under what applicable law, it would be due fees *against the government*, especially attorneys' fees.

This Court notes it requested counsel for each party to direct the Court to where, in the record or in briefing, each party might have addressed the *legal* question of whether costs and fees

---

[51] Fed.R.Civ.P. 54(d)(1).
[52] 28 U.S.C. § 1920.
[53] Rec. Doc. 1, p. 36.
[54] This Court notes certain types of fees are made explicitly available against the government under other legal circumstances. *See* 28 U.S.C. § 1922 (describing which witness fees are taxable against the United States in the examination of a *criminal* case before a U.S. Magistrate Judge).
[55] 43 U.S.C. 1349(a)(5).

are recoverable *against the government*, and, if so, what types of costs and fees are recoverable. The parties conveyed to the Court that the specific question of costs and fees against the government had not been briefed by either party.

This Court, however, notes the Local Rules of the Western District of Louisiana address certain aspects of an inquiry into costs and fees. *See*, LR54.1, *et seq.* Upon a close reading of the noted Local Rules, there is, perhaps, question whether they present an additional opportunity to argue *the availability* of costs, or simply *what costs* should or might be awarded, if available. This potential ambiguity might be compounded by Fed.R.Civ.P. 54(d), which reads in relevant part that "costs--other than attorney's fees--should be allowed to the prevailing party...[b]ut costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law," and by the mention of costs and fees found within OCSLA.[56]   In light of these potential ambiguities, the parties will have the opportunity to each submit a **five page brief, with normal font and margin limitations, and no attachments,** regarding the question of Island's request for costs and fees against the government in this matter.   Those briefs shall be filed no later than **Friday, January 13, 2017**. This Court will DEFER final ruling and issuance of judgment until after it has received those briefs and made final ruling as to costs and fees.

THUS DONE AND SIGNED in Lafayette, Louisiana, this $\overline{23^{rd}}$ day of December, 2016.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[56] 43 U.S.C. § 1349(a)(5).